IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROBIN C. GLASS,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD JOHN BLANGIARDI, in his individual capacity; HAKU MILLES, in his individual capacity; DAWN TAKEUCHI APUNA, in her individual capacity; JOSHUA BOOTH GREEN, in his individual capacity; DAWN NAOMI S. CHANG, in her individual capacity; MICHAEL CAIN, in his individual capacity; CITY AND COUNTY OF HONOLULU; and STATE OF HAWAII,<br><br>Defendants. | CIV. NO. 26-00034 JMS-KJM<br><br>ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS, ECF NO. 17, AND GRANTING IN PART AND DENYING IN PART STATE DEFENDANTS' MOTION TO DISMISS, ECF NO. 12 |

**ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS, ECF NO. 17, AND GRANTING IN PART AND DENYING IN PART STATE DEFENDANTS' MOTION TO DISMISS, ECF NO. 12**

## I. INTRODUCTION

Pro se plaintiff Robin C. Glass ("Glass") alleges that his property has suffered flooding, landslides, and other hazardous conditions as a result of a berm removal and driveway construction project authorized by the State of Hawaii (the "State") and the City and County of Honolulu (the "City").  Based on these and

other alleged injuries, Glass sued the State and three state officials (collectively,

"State Defendants"), as well as the City and three city officials (collectively, "City

Defendants").[1]

Glass asserts five claims, all under 42 U.S.C. § 1983:

- a substantive due process claim against all six officials;

- a procedural due process claim against one of the state officials;

- a takings claim against all six officials;

- an equal protection claim against one of the city officials; and

- a claim against the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).[2]

*See* ECF No. 1 at PageID.10–30, 36–40.[3]

---

[1]  The three state officials are: Joshua Booth Green ("Green"), Governor of Hawaii; Dawn Naomi S. Chang ("Chang"), Chairperson of the Board of Land and Natural Resources and Director of the Department of Land and Natural Resources; and Michael Cain ("Cain"), Administrator of the Office of Conservation and Coastal Lands.  The three city officials are: Richard John Blangiardi ("Blangiardi"), Mayor of Honolulu; Haku Milles ("Milles"), Director of the Department of Design and Construction; and Dawn Takeuchi Apuna ("Apuna"), Director of the Department of Planning and Permitting.  All are sued only in their individual capacities.

[2]  Although not stated explicitly, Glass appears to also be asserting a *Monell* claim against the State.  *See* ECF No. 1 at PageID.40 (referring to "statewide liability under 42 U.S.C. § 1983").  This claim is squarely foreclosed by Supreme Court precedent, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) (reiterating that "a State is not a person within the meaning of § 1983"), and is therefore DISMISSED WITHOUT LEAVE TO AMEND.

[3]  The "Claims for Relief" section of the complaint fails to specify which claims are asserted against which defendants.  *See* ECF No. 1 at PageID.36–40.  This breakdown of Glass's claims is based instead on the "Defendant-Specific Allegations" section of the complaint, which includes parentheticals that provide some clarity.  *Compare, e.g.*, *id.* at PageID.10 (listing "Substantive Due Process" and "Equal Protection" in parenthetical under heading for

(continued . . . )

2

Now before the court are separate motions to dismiss filed by State Defendants and City Defendants. For the reasons that follow, City Defendants' motion is GRANTED, and State Defendants' motion is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

### A. Factual Background[4]

In the 1970s, the City and the State "approved and permitted the removal of a berm and the construction of a driveway, wall, and fill" near Glass's property. ECF No. 1 at PageID.9. Before the berm and an "associated drainageway" were removed, they had "functioned as a stormwater control structure within the public right-of-way." *Id.* Their removal "altered historic drainage patterns . . . , redirected stormwater runoff toward [Glass's] property, and contributed to slope instability and hazardous conditions that . . . discharge roadway runoff onto the site" when it rains. *Id.*

_____

Blangiardi), *with id.* at PageID.18 (listing only "Substantive Due Process" under heading for Milles). And because none of these parentheticals includes the takings claim, the court assumes that claim is asserted against all six officials.

[4] This factual background is drawn from the allegations contained in the complaint, ECF No. 1, which are taken as true for purposes of this motion to dismiss. *See, e.g.*, *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). Although the 43-page complaint lacks a clear timeline, and many of the allegations it contains are vague and repetitive, the court has made its best effort to provide an accurate summary here. *See, e.g.*, *Davis v. Silva*, 511 F.3d 1005, 1009 n.4 (9th Cir. 2008) (stating that pro se filings are to be read "generously, 'however inartfully pleaded'" (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam))). Additional relevant allegations are introduced in the appropriate discussion sections to follow.

3

In July 2022 and January 2023, Glass requested that the City and the State "investigate the removed berm" and the "unsafe structure" that had been built in its place. *Id.* Glass also "submitted technical documentation, drawings, permit history, and code citations" related to the berm removal and the "resulting drainage and slope hazards." *Id.* at PageID.10. The City and the State, however, "declined to review the submitted materials, made no engineering findings, performed no causation analysis," and ultimately "declined to address the reported structural defects." *Id.* at PageID.9–10.

Glass undertook his own "stormwater diversion and emergency mitigation" efforts, apparently to protect his property. These efforts involved working in "unstable, hazardous conditions without training or safety equipment in order to prevent repeated flooding and landslides." *Id.* at PageID.20. In response, the City and the State "initiated administrative enforcement proceedings" against Glass, *id.* at PageID.9, including imposing "one-time administrative fines totaling $34,000" and "conditional daily penalties of $15,000 per day" for "non-compliance," *id.* at PageID.33.

The enforcement actions formed part of a "closed regulatory loop" in which the City and the State "each conditioned action on the prior approval of the other." *Id.* at PageID.10. Specifically, the City "declined to process emergency repair or stabilization permits absent State authorization, while the State declined

4

to process conservation district permits or remediation requests while City enforcement actions remained outstanding." *Id.* This impasse left Glass "without any meaningful opportunity to be heard" and "without any lawful path to abate the hazard as penalties and enforcement escalated." *Id.* at PageID.7, 10. Meanwhile, the "unsafe condition" affecting Glass's property was left "uncorrected" and remained so as of the filing of this lawsuit. *Id.* at PageID.10.

**B.     Procedural Background**

Glass filed his complaint on January 28, 2026. ECF No. 1. State Defendants filed a motion to dismiss on May 11, 2026. ECF No. 12. Glass filed an opposition to State Defendants' motion on May 15, 2026, ECF No. 13, and on June 1, 2026, State Defendants filed a reply, ECF No. 20. City Defendants filed a motion to dismiss on May 20, 2026. ECF No. 17. Glass filed an opposition to City Defendants' motion on June 8, 2026, ECF No. 23, and on June 22, 2026, City Defendants filed a reply, ECF No. 24. The court decides the motions without a hearing pursuant to Local Rule 7.1(c).

## III.  <u>STANDARDS OF REVIEW</u>

Federal Rule of Civil Procedure 12 permits the assertion of certain defenses by motion, including the absence of subject matter jurisdiction and the plaintiff's failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1), (6). Dismissal for lack of subject matter jurisdiction is

"appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984 (9th Cir. 2008). Dismissal for failure to state a claim is appropriate where, after setting conclusory allegations aside and accepting non-conclusory allegations as true, the complaint fails to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *see also* Fed. R. Civ. P. 8 (a)(2) (establishing that a complaint must contain "a short and plain statement" of each claim "showing that the pleader is entitled to relief"); *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (stating that a complaint "may not simply recite the elements of a cause of action," and instead "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"). Pro se filings must be liberally construed. *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

## IV.  <u>DISCUSSION</u>

City Defendants argue that Glass lacks standing, and State Defendants argue that the *Rooker-Feldman* doctrine precludes this court from considering Glass's claims. These arguments are jurisdictional and therefore must be addressed first. *See, e.g.*, *In re O'Gorman*, 115 F.4th 1047, 1054 (9th Cir. 2024) ("Because Article III standing is a threshold jurisdictional issue, we address it first."); *Elwood v. Drescher*, 456 F.3d 943, 948 (9th Cir. 2006) (explaining that

6

*Rooker-Feldman* "provides a jurisdictional ground for dismissal, and federal courts must generally address jurisdictional issues first").

## A.      Standing

A plaintiff bears the burden of establishing standing by showing that he (1) has suffered a concrete and particularized injury that (2) is fairly traceable to the defendant's conduct and (3) can be redressed by a judicial decision in his favor. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  The "manner and degree of evidence" required to establish standing corresponds to the stage of the litigation.  *Id.* at 561.  Accordingly, at the pleading stage, the plaintiff must plausibly allege facts that, if true, would establish each element of standing.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (stating that "at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975))).

City Defendants' argument is focused on the first element of standing: the existence of a concrete and particularized injury.  Specifically, City Defendants argue that the complaint fails to plausibly allege that "the threat of harm and future injury is real and imminent."  ECF No. 17-1 at PageID.361.  This argument is based on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), which involved a plaintiff who had been placed in an illegal chokehold during a traffic stop.  As *Lyons* explained, the plaintiff's standing to seek injunctive relief "depended on

whether he was likely to suffer future injury from the use of the chokeholds by police officers." 461 U.S. at 105. *Lyons* held that the past incident alone was not sufficient to show "a real and immediate threat" that the plaintiff "would again be stopped" by police officers and placed in an illegal chokehold. *Id.*

City Defendants focus narrowly on two past incidents alleged in the complaint: a flood that damaged Glass's property in 2021, and a fall he suffered on the property in 2024. ECF No. 17-1 at PageID.361. They argue that because the complaint does not reference specific incidents occurring "since that time," the threat of future flooding is "speculative" and "conjecture." *Id.*

City Defendants' argument overlooks the complaint's allegation that the "condition persists . . . and continues to cause flooding, slope instability, and discharge of public runoff" onto Glass's property. ECF No. 1 at PageID.7. This present-tense allegation describes ongoing injuries, which support standing to seek injunctive relief. *See Lyons*, 461 U.S. at 102 (explaining that "[p]ast exposure to illegal conduct does not *in itself* show a present case or controversy regarding injunctive relief . . . *if unaccompanied by any continuing, present adverse effects*" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) (emphases added))). City Defendants' challenge to Glass's standing is therefore rejected.

**B.** *Rooker-Feldman* **Doctrine**

The *Rooker-Feldman* doctrine bars review of state-court judgments by the lower federal courts. *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). *Rooker-Feldman* applies only in "limited circumstances," *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 291 (2005), where the plaintiff "asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision," *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003). The doctrine does not apply where the plaintiff merely "asserts as a legal wrong an allegedly illegal act or omission by an adverse party." *Id.* Accordingly, to determine whether *Rooker-Feldman* applies, the court does not "simply compare the *issues* involved in the state-court proceeding to those raised in the federal-court plaintiff's complaint." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003) (quoting *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 476 (10th Cir. 2002)). Instead, the court considers "whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Id.* (quoting *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996)).

Here, State Defendants incorrectly characterize Glass's claims as "an attempt . . . to have this court review and overturn state court decisions." ECF No. 12-1 at PageID.75. True, the state court dismissed claims similar to those raised

here.  *See* ECF No. 12-2 (Glass's state-court complaint); ECF No. 12-3 (state-court dismissal); *Duckett v. Godinez*, 67 F.3d 734, 741 (9th Cir. 1995) ("We may take judicial notice of proceedings in other courts, whether in the federal or state systems.").  But similarity between the "issues involved" in the two cases, *Bianchi*, 334 F.3d at 900, does not mean that Glass's alleged injuries were "caused by" the state-court judgment, *Exxon Mobil*, 544 U.S. at 284.  In other words, although Glass may be attempting to relitigate the same underlying conduct that was at issue in state court, doing so will not require this court to review and potentially reject the state-court judgment.  *Rooker-Feldman* therefore does not apply.[5]

\* \* \*

Having rejected both jurisdictional arguments, the court turns to the remaining arguments for dismissal.  State Defendants and City Defendants both argue that Glass's claims against the individual officials are time-barred.  *See* ECF No. 12-1 at PageID.70–72; ECF No. 17-1 at PageID.362–363.  The court addresses that argument first, before turning to City Defendants' argument that the *Monell* claim—and any of the claims against the city officials that are not time-barred— must be dismissed as inadequately pled.  *See* ECF No. 17-1 at PageID.363–376.

---

[5] Claim preclusion may apply where *Rooker-Feldman* does not.  *See Exxon Mobil v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2008) ("Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law.").  But claim preclusion "is not a jurisdictional matter," *id.*, and State Defendants do not argue that it applies here.

## C.    Statute of Limitations

Section 1983 claims are subject to the forum state's statute of limitations for personal injury claims, *Knox v. Davis*, 260 F.3d 1009, 1012 (9th Cir. 2001), which in Hawaii is two years, Hawaii Revised Statutes ("HRS") § 657-7. Federal law, however, determines when a § 1983 claim accrues. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a § 1983 claim accrues when the plaintiff has a complete cause of action, *id.*, and "knows or has reason to know of the injury," *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). The elements required for a complete cause of action depend, of course, on the underlying federal right at issue. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979) (stating that "the first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived" of a federal right).

Dismissal on statute of limitations grounds is appropriate only where it is apparent on the face of the complaint that a claim is time-barred. *See, e.g.*, *United States v. Page*, 116 F.4th 822, 829 (9th Cir. 2024). Given this requirement, the court first examines the allegations in the complaint to determine when each of Glass's claims accrued, and which—if any—on their face are time-barred. The court then turns to Glass's counterarguments. The motions' treatment of the statute of limitations issue, however, warrants a brief prefatory comment on the party presentation rule.

11

### 1.    *Party Presentation Rule*

"Federal courts adhere to the principle of party presentation."

*Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026).  Under

this principle, "we rely on the parties to 'frame the issues for decision' and decide

'only the questions presented.'"  *Id.* (quoting *United States v. Sineneng-Smith*, 590

U.S. 371, 375–76 (2020).

Glass's complaint raises four distinct constitutional claims under

§ 1983, as well as a *Monell* claim.  Both motions, however, lump claims together

in arguing the statute of limitations.  *See* ECF No. 12-1 at PageID.70–72; ECF No.

17-1 at PageID.362–363.  That is, neither motion recognizes that because each

underlying federal right has its own essential elements, the facts relevant to claim

accrual differ from one claim to the next.  *See Kato*, 549 U.S. at 388 (stating that a

claim accrues when the plaintiff has a complete cause of action).  This sparse

briefing has required the court to thread a needle—to adhere to the party

presentation rule without accepting wholesale the motions' oversimplified framing.

The motions' cursory briefing on the statute of limitations verges on

"insufficient to resolve the issue."  *In re Apple Inc. Device Performance Litig.*, 386

F. Supp. 3d 1155, 1184 n.7 (N.D. Cal. 2019).  Our adversarial system demands

more of litigants; it is not enough to simply "make an assertion and leave the Court

to do counsel's work—framing the argument and putting flesh on its bones through

12

a discussion of the applicable law and facts." *June J. v. Comm'r of Soc. Sec.*, 2023 WL 4998846, at \*2 (W.D. Wash. Aug. 4, 2023).  With that said, the court has "the authority"—and indeed the duty—"to identify and apply the correct legal standard, whether argued by the parties or not." *Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013) (citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)). The court has devoted significant time and effort to doing so in this case—time and effort that should have been spent by the defendants in the first instance.

### 2.   *Accrual of Claims*

#### a.   *Substantive due process claim*

Glass's substantive due process claim is asserted as a state-created danger claim, *see* ECF No. 1 at PageID.36, which has two elements: that the government (1) engaged in affirmative conduct that placed the plaintiff in danger, and (2) did so with deliberate indifference to a known and obvious danger, *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011).  The deliberate-indifference element focuses on the defendant's state of mind at the time of the affirmative conduct.  *See Wood v. Ostrander*, 879 F.2d 583, 588 (9th Cir. 1989) (considering whether the defendant police officer acted with deliberate indifference by leaving the plaintiff "by the side of the road at night in a high-crime area").

Glass's claim is based on the "life-threatening condition" allegedly affecting his property—that is, the "drainage and slope hazards" that resulted from

the berm removal.  ECF No. 1 at PageID.10, 36–37.  In other words, the essence of the claim is that the City and the State authorized the berm removal with deliberate indifference to the impacts on Glass's property and personal safety.  The authorization allegedly occurred in the 1970s, but even assuming that Glass was not aware of it at the time, he had become aware no later than July 2022, when he submitted an investigation request to the City supported by "engineering evidence attributing the hazardous conditions to City- and State-approved construction."  *See id.* at PageID.9.  This claim therefore accrued no later than July 2022.

b.      *Procedural due process claim*

A procedural due process claim requires a deprivation of a constitutionally protected interest without adequate procedural protections.  *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1224 (9th Cir. 2021).  Glass's claim is based on the "enforcement actions and penalties" allegedly imposed against him without "adequate factual findings" and a "meaningful opportunity to be heard."  ECF No. 1 at PageID.37.  The complaint vaguely alleges the involvement of multiple state and city agencies but appears to assert this claim against only one defendant:  Chang, a state official who headed the Board of Land and Natural Resources ("BLNR").  *See id.* at PageID.3, 6–7, 27.  Although the complaint alleges that Chang "threaten[ed] administrative penalties and enforcement action" against Glass in June 2023, ECF No. 1 at PageID.28, it does

14

not allege that her threats deprived Glass of a protected interest.  Instead, the

deprivation apparently occurred when BLNR issued a "penalty assessment" against

Glass in October 2025.  *Id.* at PageID.6; *see also, e.g.*, *Galfer v. City of Los

Angeles*, 2013 WL 12474129, at \*5 (C.D. Cal. July 31, 2013) (observing that

"courts have previously held that the payment of fines constitutes a meaningful

private interest that is protected by due process") (citing *Quick v. Jones*, 754 F.2d

1521, 1523 (9th Cir. 1985)).  As a result, this claim appears to have accrued no

earlier than October 2025.[6]

     *c.*    *Takings claim*

A takings claim has two elements: (1) a government taking of private

property for public use, and (2) a failure to provide just compensation to the

property owner.  U.S. Const. amend. V; *see also, e.g.*, *Knick v. Township of Scott*,

588 U.S. 180, 184 (2019).  Glass's takings claim is based on the berm removal

allegedly diverting stormwater runoff onto his property and making it "part of a de

facto public hazard-management and stormwater-control system."  ECF No. 1 at

PageID.37.  In other words, the essence of the claim is that the berm removal

caused a permanent pattern of intermittent flooding of Glass's property.

---

[6]  A procedural due process claim does not accrue until the state has failed to provide due
process.  *Reed v. Goertz*, 598 U.S. 230, 235–36 (2023).  In some circumstances, the window to
provide due process does not close—and the claim does not accrue—until sometime after the
plaintiff has been deprived of a protected interest.  *See id.*  The court therefore deliberately uses
the phrase "no earlier" here, in recognition of the possibility that the October 2025 penalty
assessment was appealable or otherwise subject to further due process.

This kind of takings claim accrues when it becomes "clearly apparent . . . that the intermittent flooding [is] of a permanent nature." *Barnes v. United States*, 538 F.2d 865, 873 (Ct. Cl. 1976), *abrogated in part on other grounds by Ark. Game & Fish Comm'n v. United States*, 568 U.S 23 (2012); *see also Fallini v. United States*, 56 F.3d 1378, 1382 (Fed. Cir. 1995) (applying *Barnes*); *Jackson-Greenly Farm, Inc. v. United States*, 144 Fed. Cl. 610, 621 (2019) (same). Here, the complaint alleges that the 1970s berm removal had been "directing roadway stormwater onto [Glass's] property from that time to the present," and that Glass requested investigation into the issue as early as July 2022. ECF No. 1 at PageID.7, 9. In other words, the "permanent nature" of the flooding had become "clearly apparent" to Glass by July 2022 at the latest, and the claim therefore accrued no later than that time. *Barnes*, 538 F.2d at 873.

    d.    *Equal protection claim*

Glass asserts a class-of-one equal protection claim, which requires a plaintiff to show that he was intentionally treated differently from other similarly situated individuals without a rational basis. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). This claim appears to be asserted only against Blangiardi, the mayor of Honolulu. *See* ECF No. 1 at PageID.10.

16

The complaint alleges that Glass was "treated differently from similarly situated property owners affected by the same storm events and drainage corridor." *Id.* at PageID.38. Specifically, the complaint alleges that:

- the City "undertook extensive emergency remediation" on nearby private property that had been affected by "the same storm event";

- Glass was "denied comparable remediation and instead subjected to enforcement actions that compounded the danger"; and

- Blangiardi "was on notice of both situations and permitted materially different treatment without any rational, safety-based justification."

*Id.* at PageID.15–16. These events appear to have occurred between late 2022 and early 2023. *See id.* (referring to December 28, 2022 in description of the City's remediation of the nearby property, and stating that "after continued inaction," Glass submitted a complaint to federal officials in February 2023). This claim therefore accrued no later than early 2023.

### 3. *Glass's Arguments*

To summarize, it is apparent from the face of the complaint that Glass's substantive due process, equal protection, and takings claims accrued more than two years before this action was filed in January 2026, *see* ECF No. 1, and are therefore time-barred. Glass, however, argues that (1) his claims are based on "discrete, independently actionable acts" within the statute of limitations, and (2) in the alternative, they are based on continuing violations of his rights. *See*

ECF No. 13 at PageID.143–145; ECF No. 22 at PageID.422–423.  The court

rejects both arguments.

First, Glass argues that each "rainfall event . . . constitutes a new

physical occupation" of his property and "a new violation" of his rights.  ECF No

13 at PageID.144.  He is mistaken.  As discussed, a takings claim of the kind Glass

asserts here accrues when the "permanent nature" of the "intermittent flooding"

becomes "clearly apparent."  *Barnes*, 538 F.2d at 873.  From that point forward,

each subsequent flooding event is merely a continuing impact of the taking, and is

not independently actionable.  *See Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir.

2001) (stating that the Ninth Circuit has "repeatedly held" that mere continuing

impacts of past violations are not actionable).  Likewise, a rainfall event is not

affirmative governmental conduct that could give rise to a new state-created danger

claim, *Patel*, 648 F.3d at 974, nor is it intentional differential treatment that could

give rise to a new class-of-one equal protection claim, *Olech*, 528 U.S. at 564.

Second, Glass argues that his claims are timely under the continuing

violations doctrine.  ECF No. 13 at PageID.144–145; ECF No. 22 at PageID.423.

In the Ninth Circuit, however, "little remains of the continuing violations

doctrine."  *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 748 (9th Cir. 2019).

Specifically, the "serial acts" branch of the doctrine applies only to hostile work

environment claims, and the "systematic" branch applies only to class-wide

pattern-or-practice claims. *Id.* Glass appears to be relying on the "systematic"

branch, *see* ECF No. 13 at PageID.145 (referring to "ongoing control, ongoing

enforcement, and ongoing refusal to permit remediation"), but the Ninth Circuit

has "consistently refused to apply the systematic branch to rescue individualized

claims that are otherwise time-barred," *Bird*, 935 F.3d at 748. The continuing

violations doctrine is therefore inapplicable here.

\* \* \*

In sum, Glass's substantive due process, equal protection, and takings

claims are barred by the statute of limitations.[7] It is not clear from the face of the

complaint, however, that Glass's procedural due process claim against Chang is

time-barred.

---

[7] City Defendants do not argue that Glass's *Monell* claim is time-barred. *See* ECF No. 17-1 at PageID.362. The court does not consider this issue sua sponte, and instead observes only that "[t]he question of when a *Monell* claim accrues turns out to be a thornier issue than one might imagine." *Bell*, 2023 WL 5836812, at \*2 (quoting *Boyer v. Clinton Cnty. Sheriff's Off.*, 645 F. Supp. 3d 815, 823 (S.D. Ohio 2022)). Some courts hold that a *Monell* claim accrues when the underlying violation of rights occurs, while others hold that a *Monell* claim accrues when the plaintiff is "at least on inquiry notice that the conduct the plaintiff experienced is part of some pattern or practice sufficient to give rise to *Monell* liability." *Id.* (quoting *Boyer*, 645 F. Supp. 3d at 823). The Ninth Circuit has previously declined to address this question. *See Marlowe v. City & County of San Francisco*, 753 F. App'x 479, 479 (9th Cir. 2019).

## D.    Failure to State a Claim

The court next considers City Defendants' argument that the complaint fails to state a *Monell* claim.[8]  A complaint "may not simply recite the elements of a cause of action," *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), and "[v]ague and conclusory allegations . . . are not sufficient to withstand a motion to dismiss," *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  Instead, a claim must be supported by factual allegations that, if true, would establish each essential element and show that the plaintiff "is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  The court generally will not look beyond the four corners of the complaint to decide whether it states a plausible claim.  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

To state a *Monell* claim, the plaintiff must plausibly allege that the municipality "had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he suffered."  *Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007) (quoting *Monell*, 436 U.S. at 694).

---

[8]  City Defendants also argue that the complaint fails to plausibly plead the claims against the city officials.  *See* ECF No. 17-1 at PageID.369–376.  The court declines to consider that argument, having already concluded that those claims are time-barred.  In contrast, although the procedural due process claim against Chang is not time-barred, State Defendants do not argue that that claim is not plausibly pled.  *See* ECF No. 12-1.  The court declines to raise that issue sua sponte.  *See Margolin*, 146 S. Ct. at 148 (describing party presentation rule).

20

Here, even assuming that the complaint plausibly alleges a constitutional violation, it fails to plausibly allege a policy, custom, or practice on the part of the City.

Where, as here, the complaint does not allege the existence of a formal policy, a *Monell* claim can be based instead on (1) an informal but longstanding and widespread practice, (2) the acts of officials with final policymaking authority, or (3) ratification by such officials.  *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).  Glass's complaint invokes all three possibilities, and the court addresses each in turn.

First, the complaint asserts that the alleged constitutional violations "arose from a municipal custom . . . of fragmenting authority over stormwater infrastructure, conditioning hazard abatement on reciprocal approvals, and permitting enforcement actions to proceed in the face of known life-safety risks." ECF No. 1 at PageID.38.  The complaint does not, however, include any allegations showing that this purported custom existed beyond Glass's own experience.  In other words, the complaint fails to show that Glass's experience was not "isolated," and was instead the result of "practices of such duration, frequency, and consistency" that they had "become a traditional method of carrying out policy."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("The custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled' city policy." (quoting *Monell*, 436 U.S. at 691)).

Second, the complaint asserts that the alleged violations stemmed at least in part from actions taken by Apuna and Milles, who "served as department heads . . . exercising final policymaking authority within their respective domains." ECF No. 1 at PageID.38. For example, the complaint alleges that Apuna "authoriz[ed] emergency repairs and then revers[ed] course through enforcement," which "increased and prolonged" Glass's "exposure to a known and ongoing life-safety risk." *Id.* at PageID.22. But a close reading of the complaint shows that these actions were not taken by Apuna herself—that is, by an alleged final policymaker—but instead by unspecified "leadership" and "inspectors" within her department. *See id.* at PageID.21. And although the complaint attempts to attribute their actions to Apuna by asserting that she had been "acting through" them, *see id.*, no factual allegations support this conclusory claim.

With respect to Milles, the complaint focuses on his alleged assertion that the City "bore no responsibility for restoring or addressing" the removed berm, which the complaint characterizes as "an official refusal to acknowledge, refer, or coordinate" a municipal response to Glass's concerns. *Id.* at PageID.19. But the complaint alleges that Milles's department was "responsible for . . . capital improvements within the public right-of-way"—that is, for new projects—and concedes that "routine maintenance authority resided in *other* municipal departments." *Id.* at PageID.18–19 (emphasis added). Given this concession, the

22

complaint fails to show that Milles took any action in an area where he held final policymaking authority.

Finally, although the complaint alleges that Blangiardi "ratif[ied] a closed regulatory loop that prevented lawful remediation of a known danger," ECF No. 1 at PageID.12, it fails to allege any "affirmative or deliberate conduct" that could constitute ratification, *Gillette*, 979 F.2d at 1348.  Instead, the complaint merely alleges that Blangiardi "took no action to direct investigation, remediation, or interdepartmental coordination" and "continued to permit delay, non-abatement, and enforcement actions."  ECF No. 1 at PageID.12, 16.  These vague allegations at most reflect acquiescence, which is insufficient to show ratification.  *See Sheehan v. City & County of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014) ("Ratification . . . generally requires more than acquiescence."), *rev'd in part on other grounds*, 575 U.S. 600 (2015).

In sum, the complaint fails to plausibly allege a policy, custom, or practice and therefore fails to state a *Monell* claim.[9]

---

[9]  In addition to the allegations discussed in detail here, the complaint alleges that the officials' actions were "systemic" and "coordinated," and reflected "customs, practices, and patterns" and "deficiencies in training, supervision, or guidance." ECF No. 1 at PageID.11–12, 38–39.  Without factual support, these "labels and conclusions" are insufficient to state a claim. *Twombly*, 550 U.S. at 555.

23

## V.  **CONCLUSION**

To summarize, (1) Glass's substantive due process, takings, and equal

protection claims are barred by the statute of limitations, and (2) he fails to state a

*Monell* claim.  Accordingly, City Defendants' motion is GRANTED, State

Defendants' motion is GRANTED IN PART, and those claims are DISMISSED.[10]

Glass's procedural due process claim against Chang, however, remains.

Although it appears that amendment may be futile, by August 24,

2026, Glass may file a statement of no more than ten pages explaining how he

could amend the dismissed claims to state plausible claims for relief.  *See*

*McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir. 2004) (affirming

dismissal without leave to amend where "amendment would have been futile").

The court will then determine whether to permit the filing of an amended

complaint.  If Glass elects not to file such a statement, his procedural due process

claim against Chang will remain as alleged in the original complaint.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 6, 2026.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

---

[10]  Because all claims against the city officials are dismissed, the court need not consider
City Defendants' alternative argument that those officials are entitled to qualified immunity.

24